**WUNDERLICH CONTRACTING COMPANY**

v.

**UNITED STATES.**

No. 617–52.

United States Court of Claims.

Oct. 8, 1958.

John W. Gaskins, Washington, D. C., for plaintiff. King & King, Washington, D. C., on the briefs.

William A. Stern, II, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

LITTLETON, Judge.

The plaintiff sues to recover money to which it asserts it was entitled under a contract with the United States. Defendant, under its interpretation of the contract, denies that plaintiff is entitled to the payment claimed.

The contract under which this claim arises was made on November 18, 1947, between plaintiff and the Army Corps of Engineers. It required plaintiff to construct an earth embankment and spillway of Cherry Creek Dam and Reservoir near Denver, Colorado. Work was commenced in the spring of 1948 and was completed in January of 1950. One part of the work required by the contract was the placing, on the upstream face of the dam, of a thick blanket of sand and gravel covered by a still thicker layer of heavy rock riprap to prevent the water of the reservoir from eroding the earthen dam.

Sections 4–03 and 4–05 of the contract specifications contained the following pertinent provisions:

"4–03. Placing riprap. The placing of riprap on the upstream face of the dam includes the placing of the riprap and the sand and gravel blanket. * * * The sand and gravel blanket and the riprap may be dumped and spread by mechanical equipment and arranged by hand, if necessary, to form a compact layer conforming to the lines and grades indicated on the drawings. Placement shall be kept within the following tolerances:

"Sand and gravel blanket, two inches + or −

"Riprap, six inches + only

*   *   *   *   *   *

"4–05. Measurement. Material used in all work covered by this section will be measured in its final position. The volume will be computed by multiplying the surface area by the actual average depth of each layer within the neat lines as indicated on the drawings. No allowance will be made for misplaced materials."

The contract plans included a cross section drawing with lines showing the sand and gravel blanket to be 9 inches thick, and the layer of rock riprap to be 18 inches thick. Applying the language of section 4–03 of the specifications relating to tolerances to the thicknesses shown on the drawings, the contractor could have complied with the contract by making the sand and gravel blanket any thickness from 7 to 11 inches, i. e., 9 inches with a tolerance of 2 inches plus or minus, and by making the layer of rock riprap any thickness from 18 to 24 inches, i. e., 18 inches with a tolerance of 6 inches plus only.

As the work was actually done, the sand and gravel blanket was laid with a uniform thickness of approximately 9 inches, and we have no question about that part of the work. The layer of riprap, as placed, was on the average considerably more than 18 inches thick. The plaintiff contends that the riprap was,

on the average, more than 22 inches thick.

Under the provisions of the contract, payment for furnishing and placing the riprap was to be on a unit price basis of $5.50 per cubic yard. The contract stated only an estimated number of yards of riprap. The dispute involved in this suit is whether the contract gave plaintiff the right to be paid for the number of cubic yards of riprap actually placed or only for the number of yards that would have been placed if the layer of riprap had been held to a uniform thickness of 18 inches. The additional riprap actually placed and for which plaintiff claims it is entitled under the contract to be paid, is alleged by plaintiff to be 40,-796 cubic yards.

■ The contract documents, including the drawings, were prepared by the Army Corps of Engineers. If they were ambiguous, that ambiguity should be resolved in favor of the other party to the contract. The plaintiff, having studied the proposed contract documents for the purpose of preparing its bid, interpreted those documents as providing that payment would be made for the yardage of riprap actually placed within the limits of the stated tolerance of 6 inches. The riprap work had an estimated pay value of $952,600, and an experienced contractor such as plaintiff would not have lightly interpreted the proposed contract as it did unless the language and drawings were reasonably susceptible of that interpretation.

Section 4–05 of the contract specifications, quoted above, provided the method of measuring the work for pay purposes. It said that the work would be measured "in its final position." If payment was to be made for only 18 inches of thickness, there would have been no occasion to measure anything except the perimeter lines of the area on which the riprap was placed. Possible exceptions to this statement would have been, first, a measurement finding a thickness of riprap of less than 18 inches. It seems, however, that as the riprap was placed, the Government's agents saw to it that

the minimum 18 inches thickness was complied with. If final measurement had disclosed a deficiency in this regard, presumably the contractor would have been required to supply this deficiency in kind rather than submit to a deduction from his pay. The other possible exception which occurs to us is that the sand and gravel blanket would have had to be measured, for pay purposes, since he would have been paid by cubic yards for any thickness from seven inches to eleven inches.

Section 4–05 of the specifications provided that the volume would be computed "by multiplying the surface area by the actual average depth of each layer * * *." That would indeed be an unusual way of saying that the computation of volume would be made "by multiplying the surface area by 18 inches" or "by multiplying the surface area by the required minimum thickness stated in the contract." If the latter idea was intended, there was nothing "actual" nor "average" about it. It was well known to both parties that rock riprap of the prescribed size could not be placed with a uniform 18-inch depth. Furthermore, the Government wanted the surface to be irregular so that it would break the regularity of the wave action against the dam.

Defendant stresses the remaining words of the sentence from section 4–05 quoted above, viz.: "within the neat lines as indicated on the drawings." Defendant urges that the lines on the cross section drawing showed only the 9-inch thickness of the sand and gravel blanket, and the 18-inch thickness of the layer of riprap. The plaintiff replies to this contention by quoting the provision of Article 2 of the contract that anything mentioned in the specifications and not shown on the drawings "shall be of like effect as if shown or mentioned in both." Plaintiff urges that the tolerances provided in section 4–03 of the specifications show that the 18-inch line on the drawings, read in connection with the specifications, meant a line anywhere between 18 inches and 24 inches.

We are of the opinion that the words "actual average depth" cannot be explained away, and that the words "within the neat lines as shown on the drawings" are adequately reconciled with the rest of the sentence by the provisions of Article 2 requiring the drawings and specifications to be read together. Accordingly, we conclude that plaintiff was entitled, under the contract, to be paid for the yardage of rock actually placed, within the specified tolerance.

Defendant asserts that plaintiff has not proved the amount of the yardage of rock placed by it in excess of the 18-inch depth. Upon learning that the Government's agents did not agree with its interpretation of the contract, plaintiff requested that the Government's agents act jointly with plaintiff in measuring the depth of the riprap at a sufficient number of places to determine the average depth. The Government's agents, however, feeling sure that their interpretation of the contract was the correct one, declined to participate in such measurements. Plaintiff then made its own measurements for all of the riprap thereafter placed, the area thereafter covered being 42.9% of the total area. The actual average depth in this part of the area was 22.4652 inches, resulting in a layer of riprap which was about 1½ inches less than the 6-inch plus tolerance allowed by the contract. In its claim to the contracting officer, and in this suit, plaintiff has applied that average depth to the entire area of the work. The kind of rock used and the method of placing was the same for the unmeasured area as for the measured area.

Defendant declined to participate in the measurement and has not contested its accuracy. Neither has defendant shown any reason why the 22.4652-inch figure obtained by actual measurement of 42.9% of the area does not fairly represent the average depth of the riprap in the entire area of the work.

On the basis of the record we conclude that plaintiff placed 40,796 cubic yards of rock for which it was entitled to be paid at the rate specified in the contract.

744

Judgment will be entered for the plaintiff in the sum of $224,378.00.

It is so ordered.

HOLTZOFF, District Judge, JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.